IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARRY HOYT                                                                   PLAINTIFF

v.                 Civil No. 05-5079

SHERIFF KEITH FERGUSON;
CAPT. HUNTER PETRAY;
LT. CARTER; DEPUTY BUTH;
AND DEPUTY LISENBEE                                     DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Barry Hoyt brings this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis. Hoyt contends his constitutional rights were violated when Deputy Buth and Deputy Lisenbee used excessive force against him while he was incarcerated at the Benton County Detention Center.

On August 5, 2005, defendants filed a motion for summary judgment (Doc. 14). By order entered on October 5, 2005 (Doc. 17), Hoyt was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. On November 2, 2005, plaintiff's response to the court's questionnaire (Doc. 18) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

**I. BACKGROUND**

Hoyt was arrested and booked into the Benton County Detention Center (BCDC) on December 14, 2004, on charges of assault on a law enforcement officer, second degree sexual

-1-

AO72A
(Rev. 8/82)

assault, and failure to appear. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He was provided with, and signed, the Benton County Detainee Inmate Rights and Benton County Detainee Rules forms. *Id.* at ¶ 2. He was incarcerated solely because of the pending criminal charges. *Id.* at ¶ 3.

On March 30, 2005, Hoyt submitted an inmate request form to Lt. Carter. *Resp.* at ¶ 4. He asked to be returned to general population. *Id.* He stated he would not get into trouble over there. *Id.*

On April 4, 2005, Lt. Carter responded to Hoyt's request. *Resp.* at ¶ 6. He stated that Hoyt needed to obey the rules of the facility before he could be placed into population. *Id.*

On April 2, 2005, an inmate flooded E-pod. *Resp.* at ¶ 7. Deputy Barrett and Deputy Buth were both in E-pod to supervise while the trustees cleaned up the pod. *Id.* at ¶ 8.

The cell Hoyt was assigned to, E-102, had some water in it from the flood. *Resp.* at ¶ 9. Deputy Buth came to Hoyt's cell and told him to go to the back of his cell so the trustees could squeegee the small amount of water that was in his cell. *Id.* at ¶ 10. Hoyt asked if he could clean his own cell and Buth replied no. *Id.* at ¶ 11.

Buth's incident report provides as follows:

> I asked Deputy Ledbetter to open [Hoyt's] cell door. I told Inmate Hoyt several times to go to the back of his cell Inmate Hoyt said "no". I entered his cell and told him to get on his knees. Inmate Hoyt would not go to his knees. I gave Inmate Hoyt a common peroneal strike to his left thigh. Inmate Hoyt dropped to one knee. I tried to place Inmate Hoyt on the floor but he resisted me. I told Inmate Hoyt several times to stop resisting me. I asked Deputy Barrett to assist me. Deputy Barrett and I placed Inmate Hoyt on the floor. Deputy Barrett placed handcuffs on Hoyt. I escorted Hoyt to pod control. Deputy Greenlee placed shackles on Inmate Hoyt and double locked them. I explained to Inmate Hoyt

AO72A
(Rev. 8/82)

that I was locking him down for disobeying the order of a deputy. Deputies Lisenbee and Greenlee escorted Inmate Hoyt to booking.

*Defendants' Exhibit* 5.

Deputy Barrett's incident report provides as follows:

I was in E-102 helping Deputy Buth clean up where an inmate had flooded. As trustees cleaned water from cells Deputy Buth ordered Inmate Hoyt to go to the back of his cell and get on his knees and put his hands behind his back. Inmate Hoyt did not comply with what Deputy Buth ordered him to do, Deputy Buth told Inmate Hoyt again. He still did not comply. Deputy Buth and I placed Inmate Hoyt on the floor. I placed him in handcuffs, and Deputy Buth escorted him out of the pod.

*Defts' Ex.* 4.

Hoyt agrees that Buth had Ledbetter open Hoyt's cell door and that Buth then entered the cell and ordered Hoyt to his knees. *Resp.* at ¶ 14 & ¶ 15. However, Hoyt maintains he complied with Buth's order. *Resp.* at ¶ 12 & ¶ 16.

Hoyt denies that Buth used a common peroneal strike to Hoyt's left thigh. Instead, Hoyt states Buth came up behind Hoyt and grabbed him by the hair and started kicking and hitting him. *Resp.* at ¶ 12 & ¶ 17. Hoyt denies that he resisted Buth. *Id.* at ¶ 18 & ¶ 19.

Hoyt maintains he was taken to the pod door where Buth and Lisenbee put Hoyt on the floor and slammed his head on the floor. *Resp.* at ¶ 20. Hoyt indicates Lisenbee stomped on his legs and Buth was hitting him. *Id.* After the incident was over, Hoyt states he was locked down by Lt. Carter. *Id.* Hoyt disagrees that he was escorted to booking by Lisenbee and Greenlee. *Id.* at ¶ 25.

As a result of the incident, Hoyt was charged with a disciplinary violation for disobeying the order of a deputy. *Defts' Ex.* 6. He was found guilty and locked down for ten days and also

-3-

AO72A
(Rev. 8/82)

lost his privileges. *Id.* Hoyt appealed the decision and it was affirmed by Carter on April 4, 2005. *Id.* Hoyt, however, contends he did nothing wrong. *Resp.* at ¶ 27.

On April 2, 2005, Hoyt submitted a grievance to Lt. Carter. *Resp.* at ¶ 29. He stated Buth came to Hoyt's cell and told him to go to the back of his cell. *Id.* Hoyt stated he complied. *Id.* He stated he was then told to get on his knees in the water and he also did that. *Id.*

Hoyt stated Buth came up behind him, grabbed Hoyt's hair, and started kicking and hitting him. *Resp.* at ¶ 30(a). He stated he did nothing wrong and Buth had maliciously and sadistically used force to harm him. *Id.*[1]

On April 5, 2005, Captain Petray responded to Hoyt's grievance. *Resp.* at ¶ 33. Petray stated: "This is not what happened. You did not obey the deputies when they gave you orders." *Id.*

On April 3, 2005, Hoyt submitted a request for medical attention. *Resp.* at ¶ 33. He stated he had been beaten up and his head, foot, ear and back were hurting. *Id.* Hoyt also contends he submitted a request for medical treatment on April 2nd. *Id.* at ¶ 34.

As a result of the use of force on April 2nd, Hoyt maintains his lower back hurt him so much he could not sleep at night, his leg hurt, and he had a headache. *Resp.* at ¶ 35. Hoyt indicates he went to his doctor, Dr. Huskin, to get pain pills so he can sleep. *Id.*

Hoyt was seen by Dr. Mullins on April 4, 2005. *Resp.* at ¶ 36. Hoyt told Dr. Mullins that he had been beaten up by deputies but did not give the doctor any details. *Id.* at ¶ 37.

---

[1] Defendants submitted only the front side of the grievance dated April 2, 2005. There is an arrow indicating that the grievance continued on the back of the form.

AO72A
(Rev. 8/82)

Hoyt had a small bruise on his third toe and complained of pain in his lower back. *Resp.* at ¶ 38. Dr. Mullins noted Hoyt had a small bruise on his left third toe, the toe was not swollen, and it did not appear to be fractured. *Id.* at ¶ 39.

When Dr. Mullins examined Hoyt's back, his straight leg test was negative. *Resp.* at ¶ 40. Dr. Mullins concluded Hoyt had questionable back pain and a small bruise on his toe. *Id.* at ¶ 41. Dr. Mullins prescribed Ibuprofen twice a day for five days. *Id.* Hoyt received the prescribed Ibuprofen. *Id.* at ¶ 42.

On April 6, 2005, Hoyt requested a copy of his rights as an inmate and he was provided a copy. *Resp.* at ¶ 43. On April 7, 2005, Hoyt submitted a request that he be moved to cell 216. *Id.* at ¶ 44. The request was denied. *Id.*

On April 12, 2005, Hoyt submitted a medical request stating that he was still hurting from when he had been beaten up by the deputies. *Resp.* at ¶ 45. He stated he needed to see the doctor and needed something for pain. *Id.* In response, he was seen by the nurse and Dr. Mullins. *Id.* at ¶ 46. Dr. Mullins prescribed Ibuprofen. *Id.*

On April 14, 2005, Hoyt submitted a grievance in which he stated he wanted something done about Deputy Buth and Deputy Lisenbee beating him up. *Resp.* at ¶ 48. He stated it did happen and he had witnesses. *Id.* He indicated he had done nothing wrong and Buth had maliciously and sadistically used force against him. *Id.* Captain Petray responded that he had already answered this. *Id.*

Hoyt named Carter as a defendant solely because he handled the appeal of Hoyt's disciplinary charge. *Resp.* at ¶ 50. As a result of the disciplinary charge, Hoyt was locked down. *Id.*

AO72A
(Rev. 8/82)

Hoyt has named Petray as a defendant solely because he responded to Hoyt's grievances regarding the alleged beating. *Resp.* at ¶ 51. Hoyt maintains Petray lied when he said nothing happened. *Id.*

Hoyt named Sheriff Ferguson as a defendant solely because he is in charge of the BCDC. *Resp.* at ¶ 52. Hoyt indicates Sheriff Ferguson would not do anything about the deputy who beat Hoyt up. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

AO72A
(Rev. 8/82)

## III. DISCUSSION

Defendants contend they are entitled to summary judgment in their favor. Defendants first contend their conduct was objectively reasonable. They argue a minimal level of force was used and it was necessary given the plaintiff's actions. They maintain plaintiff has absolutely no proof to support his account of the events including any injuries that are consistent with his allegations. Next, defendants contend the plaintiff has failed to allege any action on the part of Sheriff Ferguson, Carter, or Petray that would constitute a constitutional violation. Finally, defendants contend Hoyt suffered insufficient injuries to satisfy the physical injury requirement of the Prison Litigation Reform Act (PLRA).

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Hoyt was a pretrial detainee. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10

(1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

Applying the applicable law to the facts of this case, the court concludes there are genuine issues of fact exist as to whether Buth and Lisenbee used excessive force against Hoyt. Hoyt, Buth and Barrett have given contradictory versions of what occurred during the alleged use of force. Buth and Barrett maintain that Lisenbee wasn't even involved in the use of physical force against Hoyt.

While one might expect to see medical evidence of bruising, beyond the one bruise on Hoyt's great toe, if the incident occurred as Hoyt described, there is evidence establishing he sought, and received, medical care on at least two occasions after the incident. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003)("An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment.")(citation omitted). At the

AO72A
(Rev. 8/82)

summary judgment stage, we are not free to make credibility determinations and adopt one version of facts over another. Instead, we must view the evidence in the light most favorable to the plaintiff. We therefore cannot say as a matter of law that only a reasonable amount of force was used against Hoyt.

Defendants next argue Hoyt's claim fails because he had no physical injury within the meaning of the physical injury requirement of the Prison Litigation Reform Act. Codified as 42 U.S.C. § 1997e(e), section 803(d) of the PLRA provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This section was "intended to limit access to the federal courts for certain prisoner claims, namely those for emotional distress unaccompanied by physical harm." *Shaheed-Muhammad v. Dipaolo*, 138 F. Supp. 2d 99 (D. Mass. 2001).

The provisions of § 1997e(e) have consistently been applied to excessive force claims. *See e.g., Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)(A bruised ear lasting three days did not constitute physical injury for purposes of § 1997e(e)); *Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 569 (S.D.N.Y. 2000)(excessive force claim dismissed where inmate's injuries were no more than *de minimis* and thus insufficient to satisfy § 1997e(e)). Here, Hoyt contends that as a result of the use of force his back hurt him so much he could not sleep at night, his leg hurt, and he had headaches. *Resp.* at ¶ 35. Hoyt was seen by Dr. Mullins twice and Hoyt also indicates he went to his own doctor to get pain pills so he could sleep. *Resp.* at ¶ 35. We believe Hoyt has shown sufficient physical injury to satisfy the provisions of § 1997e(e).

AO72A
(Rev. 8/82)

However, no evidence has been presented to suggest a basis of liability for Carter, Petray, or Sheriff Ferguson. Carter merely processed Hoyt's appeal from the finding that he had violated detention center rules. There is no indication the disciplinary procedure is unconstitutional or that Hoyt was not given an opportunity to be heard on the issue. Instead, Hoyt merely disagrees with the decision made by Carter and maintains he was negligent in the manner in which he processed the appeal. Negligence is insufficient to establish a violation of § 1983. *See e.g., Daniels v. Williams*, 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)(holding that negligence does not give rise to a § 1983 claim based on an alleged due process violation).

Similarly, with respect to Petray, Hoyt believes Petray did not handle, or investigate, Hoyt's grievances properly. This does not state a claim of constitutional dimension. *See e.g., Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)(Prisoner has no federally protected liberty interest in having grievances resolved to his satisfaction. "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

Finally, with respect to Sheriff Ferguson there was no evidence suggesting that Buth or Lisenbee acted under an official policy, a widespread custom, or practice of Benton County. *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). *See also Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)("[R]igorous standards of culpability and cause [for a § 1983 claim] must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). Nor is there any evidence Sheriff Ferguson was involved in, or had notice of, or that a lack of supervision or training was likely to result in, the alleged use of force against Hoyt. *Wever v.*

AO72A
(Rev. 8/82)

*Lincoln County*, 388 F.3d 601, 606 (8th Cir. 2004)(plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts). Sheriff Ferguson cannot be held liable merely because the duties of his position include operating and overseeing the detention facility.

## IV. CONCLUSION

I therefore recommend that defendants' motion for summary judgment be granted in part and denied in part. Specifically, I recommend that all claims against Sheriff Keith Ferguson, Capt. Hunter Petray, and Lt. Carter be dismissed. I further recommend that the motion be denied as to Deputy Buth and Deputy Lisenbee.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of November 2005.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE