IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARRY HOYT                                                               PLAINTIFF

v.                  Civil No. 05-5079

DEPUTY BUTH;
AND DEPUTY LISENBEE                                  DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the undersigned for report and recommendation is the civil rights complaint filed by Barry Hoyt, currently an inmate of the Benton County Detention Center. Hoyt proceeds pro se and *in forma pauperis*.

While detained at the Benton County Detention Center, Hoyt contends his constitutional rights were violated on April 2, 2005, when Deputy Buth and Deputy Lisenbee used excessive force against him. An evidentiary hearing was conducted on April 25, 2006. At the conclusion of the hearing, the matter was taken under advisement pending the preparation of this report and recommendation.

### I. BACKGROUND and EVIDENCE PRESENTED

At the evidentiary hearing, the court heard the testimony of a number of witnesses. For purposes of discussion, the court will summarize in the first person the testimony given.

*Barry Lee Hoyt*

I'm twenty-one years old. I was booked into the Benton County Detention Center (BCDC) on December 14, 2004.

-1-

AO72A
(Rev. 8/82)

I was housed in administrative segregation. Someone touched me on the neck and I was put in administrative segregation. They thought I had been punched. I was told I could get out of administrative segregation if I wrote another request but I decided to stay in there.

On April 2, 2005, there was a flood in E pod. I was housed in E-102. My cell was on the first floor.

Buth came to my cell. He told me to get on my knees. When he first came to my cell, he acted mad at me about having to clean my cell. I heard him ask others to get to the back of their cells but he didn't tell them to get on their knees.

The first time he told me to get to my knees I refused. I said it was sewer water and I didn't want to kneel in it. I asked if I could help clean my cell.

There were no dry spots in my cell. I could have gotten on my bunk. But he only wanted me on my knees.

When he told me again to get to my knees, I said okay I was doing it. He pulled my hair. He came up behind me and threw me to the ground. He slammed my head between the bed and the stool. Deputy Barrett came in after I was on the ground and they put handcuffs on me. Lisenbee was not in the cell.

I was taken to pod control. When I was in pod control, Buth kneed me in my lower back. He had his leg on my back.

Lisenbee was in pod control. He hurt my foot. He stepped on my foot and hit my head against the wall when we were on the way to booking. This happened after the incident with Buth. It was really a separate event.

AO72A
(Rev. 8/82)

I got a disciplinary. *See Defendants' Exhibit* 10 at page 2. I was put on lock-down for ten days. I told Lt. Carter about Buth. He still said I was going to be locked-down for ten days.

I submitted a grievance later. *See Defendants' Exhibit* 16 (grievances dated April 2, 2005, and April 14, 2005). I requested medical treatment. *See Defendants' Exhibit* 7 at page 3 (Request dated 4/3/05--"I need some medical attention. I was beaten up by deputies. My head, foot, ear, and back is hurting."); *Defendants' Exhibit* 7 at page 4 (Request dated 4/12/05–"I am still hurting from when the deputies beat me up. I need to see the Dr. I need something for pain."). I was given Ibuprofen by Dr. Mullins. I have been having bad pain in my lower back. When I was released from jail in July, I saw Dr. Huskin. Dr. Huskin prescribed pain pills.

I saw Dr. Huskin in both July and August. I don't know why medical records from November 10, 2003, indicate I complained of back and leg pain. I was seeing another doctor at that time because I had leg pain. I never mentioned back pain. I was put on Tylenol #3 because my legs kept giving out.

My back still hurts. I went back to the doctor not long ago. I was prescribed Tylenol when I was out of jail. Dr. Mullins wouldn't give me anything more.

### Billy Joe Wolfe

I'm thirty six years old. I'm an inmate in the Arkansas Department of Correction.

On April 2, 2005, I was in the BCDC. I was in the top right hand corner cell. My cell was at the top of the stairs. It was on the same wall as the phones.

A Mexican flooded the cell. Hoyt was in his cell. Buth and Barrett were in the pod. When water gets into the pod, the deputies have to open every door to get the water out of the cells. Once the pod is flooded, you don't know who did it.

-3-

Buth told Hoyt to go to the back of the cell and get on his knees. Hoyt said he didn't want to because of the water. Buth told Hoyt to get on his knees. I heard Hoyt say quit pulling on my hair, quit kicking me. He was saying something like that. Buth was in the cell. Barrett was right there.

When Hoyt was in his cell, I could hear him. He was hollering–you are hurting me. I heard the deputies tell him to get on the floor. I heard him say: "I don't want to get on the floor." When he was brought out of his cell, I could see him. Lisenbee jumped on Hoyt when the pod door opened.

To comply with Buth's order, Hoyt would have had to get down in the water. It was toilet water. When they opened the doors you could see human waste, toilet paper, etc. I would raise hell until they got me something to clean it. When the floor was flooded there were not any dry spots.

I don't think they made anyone get down in the water that day except Hoyt. Hoyt was harassed several times in jail. It might have been because of his charges. At night time, they would move him. Lisenbee would go to Hoyt's cell and make him get on his knees and harass him.

Hoyt has mental problems. It makes him susceptible. The other inmates picked on him. In administrative-segregation you don't have much interaction with other inmates.

### *Bobby Savage*

I was in the BCDC in April of 2005. I recall the pod being flooded. A Mexican did it but Hoyt got blamed.

AO72A
(Rev. 8/82)

I can't tell you exactly what happened. I remember Buth going in. I heard Hoyt say: "Quit kicking me. Quit pulling my hair. Ouch."

I don't recall Lisenbee doing anything. I just saw Lisenbee escorting Hoyt out. Buth was pulling Hoyt's arms way up. Hoyt was complaining. Lisenbee was trying to act in a professional manner. Lisenbee will joke with you but he is different than Buth.

They told Hoyt to get down on the floor. Hoyt said he didn't want to because it was sewer water and nasty. They were also talking about some art. Hoyt was drawing on the back of request forms. Buth had taken some of Hoyt's pictures before. Buth had gone through the stuff in Hoyt's cell.

Not everyone was made to get down in the water that day. I don't recall them doing that to anyone but Hoyt. I just remember Hoyt getting dragged out of his cell. When they were at the top of the stairs, I saw Buth grab Hoyt's hair. When they were going out the pod door, I saw Buth pulling Hoyt out. Lisenbee was on the right side and Buth was on the other side.

I think Hoyt was housed upstairs at the time. I don't believe he was housed downstairs. I didn't see what happened in the cell. I just heard Hoyt saying: "Let go of my hair. Quit kicking."

Buth told me he pulled Hoyt's hair. Buth would go by and tell me from time to time what he did to other inmates.

### *Phetpinthong Senesackda*

I was in the BCDC in April of 2005. I recall that the flood came from Gonzales on the top tier of the pod. When the pod floods, the water gets into the cells through the space below the cell door.

Hoyt was downstairs in the pod. I was laying down. I was in my cell with the door shut. The cell is eight foot by ten foot and has a solid door with a small window inside it.

I heard a noise. I couldn't see in Hoyt's cell but I could hear him. He was yelling out. Two deputies, one of them was Buth, came in and told Hoyt to get to the ground. Hoyt said he didn't want to get down in stool water. They threw him down. Hoyt was yelling that they were pulling his hair.

When they took Hoyt out to pod control, I saw that. I can see a reflection in the one way mirror when the door to pod control is opened. Lisenbee grabbed Hoyt and threw him to the ground when they were going out the pod door.

I saw them go into other cells to clean. The deputies used a trustee to squeegee out the water.

I didn't get on the ground. I think Buth was one of the deputies who came to my cell. I don't believe Lisenbee came to my cell. I was asked to get to the ground but I refused because it was sewer water. When I refused, I was told to get on the bunk. I was asked if I wanted my cell cleaned out.

### *Joseph Allen Buth*

I am employed at Wal-Mart headquarters. I was a jail deputy in April of 2005.

An unknown inmate flooded E-pod. No disciplinary action was ever taken so I don't think we figured out who did it. Deputy Barrett was new at the time. We went with the trustees to squeegee the water out.

AO72A
(Rev. 8/82)

It is the normal practice to use the trustees to clean. We ask the inmates to get to the back of the cell whenever we enter a cell. It is a safety issue. I think I had been working at the jail about a year. Before this, I had been around Hoyt but hadn't had any incidents with him.

In this case, it was a small flood. There was a minimal amount of water. There was probably about two inches of water where it was flooded. Hoyt's cell was only about half wet. The back half of the cell was dry. It would have taken just a small amount of time to squeegee out the water.

We were going door to door telling the inmates to get to the back of the cell. We didn't ask all inmates to get to their knees. All other inmates went to the back of their cell.

I don't usually ask an inmate to kneel in toilet water. I would if it were a dire emergency such as if an inmate had a weapon or was swinging at me.

Hoyt was standing right next to his door. I asked Hoyt to go to the back of his cell. He said no. He would not. He asked if he could clean. I told him no. I had the trustees there. I opened the cell door. I told him to go to the back of his cell. He said no. I told him to get to his knees.

I asked Hoyt several times to get to the back of his cell. I asked him four or five times. There was a dry area in his cell. He would not comply. I don't believe he said he didn't want to kneel in toilet water.

When he would not go to the back of his cell, I asked him to get to his knees. When Hoyt didn't comply, I used a common peroneal strike. Hoyt was not doing what I ordered and was stepping towards me in an aggressive manner. I didn't know what his plans were.

AO72A
(Rev. 8/82)

I didn't pull Hoyt's hair. I didn't strike or hit him other than to use the common peroneal strike.

I asked Barrett to step in the cell. He helped gain control of Hoyt. We got Hoyt into cuffs and double locked them. I got Hoyt out of the cell.

Lisenbee helped escort Hoyt out. We put Hoyt on his knees again. Then Lisenbee and Greenlee escorted Hoyt to booking. I wrote a report following the incident. *Defendants' Exhibit* 6.

The incident report provides as follows:

> I asked Deputy Ledbetter to open [Hoyt's] cell door. I told Inmate Hoyt several times to go to the back of his cell Inmate Hoyt said "no". I entered his cell and told him to get on his knees. Inmate Hoyt would not go to his knees. I gave Inmate Hoyt a common peroneal strike to his left thigh. Inmate Hoyt dropped to one knee. I tried to place Inmate Hoyt on the floor but he resisted me. I told Inmate Hoyt several times to stop resisting me. I asked Deputy Barrett to assist me. Deputy Barrett and I placed Inmate Hoyt on the floor. Deputy Barrett placed handcuffs on Hoyt. I escorted Hoyt to pod control. Deputy Greenlee placed shackles on Inmate Hoyt and double locked them. I explained to Inmate Hoyt that I was locking him down for disobeying the order of a deputy. Deputies Lisenbee and Greenlee escorted Inmate Hoyt to booking.

*Defendants' Exhibit* 6.

The use of force policy is that we are to use only the amount of force necessary to gain control. I used a knee strike. Basically a "charlie horse" strike. I learned it in the jail standards course.

### Jacob Barrett

I'm a deputy. A jailer. I've worked at the BCDC fourteen months. I started there in February of 2005.

On April 2, 2005, I was in D-pod. I got a call that someone had flooded E-102.

We asked the inmates to go to the back of the cell. This is a safety precaution. It makes the situation less confrontational. It is just standard practice. You ask the inmates to go to the back of the cell and get on their knees. This way the inmates are down and you don't have to worry about them turning on you.

That day, we handcuffed the inmates and then moved them out one cell at a time. The trustees then cleaned the cell. Once the cell was clean, the inmates were moved back in.

Hoyt would not go to the back. Buth instructed him to get on his knees. Buth went into the cell. Hoyt resisted. It went to a situation where Buth and Hoyt were wrestling. I went in and we got the handcuffs on Hoyt.

The way I remember it, Buth told Hoyt to go to the back of the cell and then to get on his knees and put his hands behind the back. I don't recall Hoyt saying why he wouldn't go to the back of the cell. I don't remember Hoyt saying he didn't want to get in toilet water.

There was ½ to ¾ inch of water in the cell. There was nothing floating in the water. The floor was pretty much all wet. I don't recall there being any dry spots.

Buth did not pull Hoyt's hair. Buth did not strike Hoyt with his fist or his foot.

Barrett's incident report provides as follows:

I was in E-102 helping Deputy Buth clean up where an inmate had flooded. As trustees cleaned water from cells Deputy Buth ordered Inmate Hoyt to go to the back of his cell and get on his knees and put his hands behind his back. Inmate Hoyt did not comply with what Deputy Buth ordered him to do, Deputy Buth told Inmate Hoyt again. He still did not comply. Deputy Buth and I placed Inmate Hoyt on the floor. I placed him in handcuffs, and Deputy Buth escorted him out of the pod.

*Defendants' Ex.* 5.

AO72A
(Rev. 8/82)

### Michael Lisenbee

I'm a corporal in the jail. In April of 2005, I was a jailer.

I don't know exactly what time the incident occurred. I heard an assistance call in E-102. Once I arrived in E-pod, I saw Buth had his arm on Hoyt's arm and his arms behind his back. My impression was that Hoyt was resisting–trying to pull away. When the pod door opened, I grabbed the inmate's arm and realized he was handcuffed. I then recognized him as Hoyt. He was escorted to booking and put in holding.

I didn't write a report. I don't recall stepping on Hoyt's foot. Any time a deputy uses force against an inmate, the deputy is required to write a report.

I didn't go to Hoyt's cell. There was water in the day-room of the pod. The water stretched half way across the day-room but didn't make it into pod control. I didn't see any feces or human waste in the water.

Typically if you enter an inmate's cell, before you enter the cell you have the inmate go to the back of the cell and either sit or face the wall with his hands on the wall. The use of force policy calls for the use of verbal commands, verbal persuasion, and then the use of control holds to physically secure the inmate.

Hoyt didn't appear to be injured. He was exerting energy to get away from Buth. Hoyt was pulling away from Buth. Buth was trying to pull him out of the pod.

### Hunter Petray

I am the jail administrator. I held this position in April of 2005.

I am the custodian of jail records. The use of force policy, *defendants' exhibit* 15, calls for the use of the minimum amount of force necessary to maintain control.

When an officer enters a cell, the officer has the inmate go to the back of the cell and get to his knees. This is a safety precaution. Safety is even more of a concern when the floors are wet.

If the pod is flooded, the jailers generally go to every cell. The water has to be cleaned up. The cell floors are not slanted but there are high spots and low spots. It is possible for water to run into a cell. It is hard to tell who flooded a pod.

I have no personal knowledge regarding April 2, 2005. I just read the reports. No officers were disciplined as a result of their actions that day.

Our medical care policy is that all medical decisions are made by the jail doctor and nurse. An inmate who makes a medical complaint is seen by the doctor or nurse. Everything is left up to the doctor and nurse.

On April 4, 2005, Dr. Mullins prescribed Hoyt Ibuprofen for five days. Hoyt received the medication.

### *Medical Records*

The BCDC medical records submitted as *defendants' exhibit* 13 indicate Hoyt was seen by Dr. Neil Mullins on April 4, 2005. *Defts' Ex.* 13 at page 4. Dr. Mullins noted Hoyt had a bruise on his left toe and was complaining of pain in his lower back. *Id.* The back exam straight leg test was noted to be negative. *Id.* Dr. Mullins prescribed Ibuprofen, 600 m.g., twice a day, for five days. *Id.* The medication records indicate Hoyt began receiving the Ibuprofen that same day. *Defts' Ex.* 13 at page 3.

On April 14th, Hoyt was again prescribed Ibuprofen, twice a day, for five days. *Defts' Ex.* 13 at page 5. Hoyt began receiving the Ibuprofen that same day. *Id.* at page 2.

AO72A
(Rev. 8/82)

The medical records from Dr. Huskin and/or the Rogers Medical Center were submitted as *defendants' exhibit* 14. These records indicate Hoyt was seen on November 10, 2003, complaining of back and leg pain. *Defts' Ex.* 14 at page 4. Note was made of the fact that Hoyt had previously been seen for similar problems. *Id.* Hoyt complained of hurting all over and that the pain was worse when he was at rest. *Id.* He was diagnosed with back and leg pain. *Id.*

The records indicate Hoyt was seen July 28, 2005. *Defts' Ex.* 14 at page 3. Among other things, he was complaining of back and abdominal pain. *Id.* Hoyt indicated that when he had been in jail "a while back" he was beaten up. *Id.* He stated he had continued to have some low back pain, lower abdominal pain, and dyspepsia or pain in the upper middle part of his stomach. *Id.* Hoyt was diagnosed with back and abdominal pain. *Id.*

Hoyt was seen again on August 11, 2005, complaining of back, abdominal and side pain. *Defts' Ex.* 14 at page 2. Note was made that he had recently been seen primarily for upper abdominal pain and that he was now having more lower abdominal pain, flank pain, and back pain. *Id.* Hoyt indicated he had been in jail recently and had been beaten up and he felt that was the cause of his pain. *Id.* Dr. Huskin listed his diagnoses as: back pain and abdominal pain. *Id.* Hoyt was prescribed Darvocet 2 at bedtime and Keflex twice a day. *Id.* He was also told to restrict his activity. *Id.*

## II. DISCUSSION

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an

AO72A
(Rev. 8/82)

arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Hoyt was a pretrial detainee. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

AO72A
(Rev. 8/82)

In this case, Hoyt maintains that while in his cell Buth pulled Hoyt's hair, slammed his head between the bed and the stool, and threw him to the ground. Hoyt's testimony regarding what occurred in his cell is supported in part by what other inmates, namely Wolfe, Savage, and Senesackda, "heard." Buth admits utilizing a common peroneal strike to gain control of Hoyt. Hoyt also contends once in pod control Buth kneed Hoyt in his lower back. With respect to Lisenbee, Hoyt maintains Lisenbee stepped on Hoyt's foot and hit his head against the wall when they were on their way to booking.

We find Hoyt has failed to establish that excessive force was used against him. First, it is undisputed that Hoyt failed to obey Buth's orders to go to the back of the cell. While Hoyt may believe his refusal was justified, the undisputed testimony was that jail procedure was for inmates to be told to go to the back of their cells and either get on their knees or put their hands on the wall before a deputy unlocked the cell door and entered the cell. There are obvious safety issues that support such a practice. Given Hoyt's refusal to obey Buth's orders, some use of force was reasonable. *Cf. Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir.1990)(When an arrestee flees or resists, some use of force by the police is reasonable). Second, Hoyt testified to forceful blows by Buth and being slammed to the concrete floor. Despite this, he had no lacerations or other visible injuries.

While there is some evidence Hoyt suffered injury to his back, the mere fact of the injury does not suggest the injuries resulted from the use of force by Buth. The injuries could have occurred in any number of ways including being caused by Hoyt's resisting being handcuffed and

being pulled from the pod to pod control. Additionally, records from Hoyt's own private physician indicate he was treated for back and leg pain prior to this incident occurring.

We similarly believe there is insufficient evidence to establish that Lisenbee used excessive force against Hoyt. Hoyt maintains that Lisenbee stepped on Hoyt's toe and hit his head against the wall while he was being escorted to booking. Hoyt did have a bruise on his toe. Hoyt did not claim to have any injury to his head. Even if Lisenbee stepped on Hoyt's toe or Hoyt's head came in contact with the wall, there is nothing to suggest that it was done on purpose or with the intent to inflict punishment. Quite simply, there is insufficient evidence to establish that the use of force was in excess of that reasonably believed to be necessary in the interests of safety, security, or efficiency.

### III. CONCLUSION

I therefore recommend that judgment be entered in the defendants' favor and this case be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of May 2006.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

-15-

AO72A
(Rev. 8/82)